# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

JEAN E. JOSEPH,

    Plaintiff,

vs.                                               Case No. 4:11cv34-MP/WCS

OFFICER R. GORMAN,

    Defendant.

                                  /

## REPORT AND RECOMMENDATION

Defendant Gorman filed a motion to dismiss, doc. 38, asserting that Plaintiff failed to exhaust administrative remedies, failed to state a claim, and raising Eleventh Amendment immunity. Plaintiff, a *pro se* inmate, was directed to respond to the motion, and reminded that each document submitted to the Court must also be provided to opposing counsel and a certificate of service must be attached indicating Plaintiff's compliance. Doc. 40.

Plaintiff provided three separate responses to the motion to dismiss. Docs. 41-43. None of those responses contain certificates of service showing they were provided

to opposing counsel, docs. 41-43, and none were mailed to counsel for Defendant, doc. 44. They were returned and Plaintiff was provided additional time to respond. Doc. 45.

Plaintiff filed another response on March 1, 2012, but once again, failed to properly submit a certificate of service demonstrating the document was provided to opposing counsel. Doc. 46. Additionally, the document is titled as Plaintiff's "motion for relief on personal injury," and identified as a "briefing motion." Doc. 38.

Notwithstanding these deficiencies, the document was provided to the Defendant, see doc. 47, and is deemed to be Plaintiff's response in opposition to the motion to dismiss. There is no prejudice to Defendant in accepting the document and the motion to dismiss, doc. 38, is ready for a ruling.

**Plaintiff's Allegations in the Complaint, doc. 25**

Plaintiff alleges that on July 30, 2010, he was taken to the Medical Center at Lake Butler. Doc. 25. Defendant Gorman, along with Officer Murphy, were transporting Plaintiff in a van. When they arrived and Plaintiff was exiting the van, Defendant Gorman directed Plaintiff to "come down backward from the van." Id. Plaintiff reports that he proceeded to do as ordered, and just as Plaintiff "reached the footstool on the ground, [Defendant] Gorman kick[ed] the footstool out of [Plaintiff's] way." Id. Plaintiff alleges that he was in leg shackles and handcuffs at the time, and he fell on the ground and was injured. He claims violations of the Eighth Amendment, the Equal Protection Clause, and the Fourth Amendment. Id., at 10.

**Exhaustion**

Defendant contends that Plaintiff's complaint should be dismissed because Plaintiff failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e.

Doc. 38. Defendant argues that although Plaintiff filed four grievance appeals following the incident, he failed to exhaust administrative remedies concerning his claim of staff abuse which Plaintiff alleged occurred on July 30, 2010. Doc. 38, pp. 3-4. Defendant asserts that Plaintiff's four appeals concerning the July 30th incident alleged negligence. *Id.* Thus, Defendant contends Plaintiff did not exhaust "administrative remedies to address any allegations of staff abuse that purportedly occurred on July 30, 2010." *Id.* In response, Plaintiff contends that the grievances procedures were "futile and inadequate," doc. 46, p. 2, and that he was entitled to bypass the grievance procedures because he was also challenging placement in close management and the denial of medical care, *Id.*, at p. 3, and because Plaintiff was given "the run-around (red tape)" in the administrative process. *Id.*, at 9.

Plaintiff's four grievance appeals to the Secretary of the Department of Corrections were attached to the motion to dismiss.[1] On August 10, 2010, Plaintiff submitted a grievance appeal to the Secretary alleging Defendant Gorman "failed to care for [Plaintiff's] well being as a correctional officer." Doc. 38, ex. A (doc. 38, p. 15). Plaintiff said Defendant Gorman "let" him "fall out the van" even though Plaintiff was

---

[1] In Bryant v. Rich, 530 F.3d 1368 (11th Cir.), *cert. denied*, 129 S.Ct. 733 (2008), the court stated that factual disputes concerning the exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1373-74, 1376. The court found that evidence may be presented to support or refute a contention that a prisoner has not exhausted the grievance process because exhaustion is a "matter in abatement and not generally an adjudication on the merits," thus, it should be raised and treated as a motion to dismiss, not a summary judgment motion. *Id.*, at 1374-75. When motions to dismiss are based on issues not enumerated under Rule 12(b), then Rule 43(c) governs "which permits courts to hear evidence outside of the record on affidavits submitted by the parties." Bryant, 530 F.3d at 1377, n.16.

fully shackled. *Id.* Plaintiff said he failed to support Plaintiff when he exited the van and moved the step box just as Plaintiff was about to step on it. *Id.* That appeal was found to be in "non-compliance" with Departmental rules because Plaintiff did not "first submit [an] appeal at the appropriate level at the institution."[2] Doc. 38, ex. B (doc. 38, p. 16). Plaintiff's grievance was "returned without action," but Plaintiff was advised that he could resubmit his grievance at his current location if he was "within the allowable time frames for processing a grievance." *Id.* The appeal response was dated August 12, 2010. *Id.*

Plaintiff's second grievance appeal to the Secretary was filed on August 19, 2010, and Plaintiff acknowledged his understanding that he must proceed through the proper channels "in order to be heard," but he stated that he was hurt "in an accident" and then "locked up and put under investigation." Doc. 38, ex. C (doc. 38, p. 17). He said he had a grievance about the injury still "standing," number 1008-218-01.[3] *Id.* Plaintiff received a response to the second grievance appeal (log number 10-6-26505) on August 26, 2010, which advised that the subject matter of the grievance was "currently being reviewed by the investigative section of the Office of the Inspector General." Doc. 38, ex. D (doc. 38, p. 18). The response advised Plaintiff that his grievance would be forwarded to that office to be included in their review. *Id.* The

---

[2] He did submit a grievance to the Warden, on August 3, 2010, but he had not yet received a response. Doc. 1, p. 12. The Warden responded on August 12, 2010. *Id.*, p. 25. Plaintiff was told by the Warden that he had not properly submitted an informal grievance before submitting a formal grievance to the warden.

[3] This was the grievance submitted to the Warden on August 3, 2010. Doc. 1, p. 12. The Warden had replied on August 12, 2010, and it was not still "standing" on August 19, 2010.

Case No. 4:11cv34-MP/WCS

response concluded with the statement: "As this process was initiated prior to the receipt of your grievance, your request for action by this office is denied." *Id.*

Plaintiff's third grievance was submitted on September 21, 2010, and no box was checked at the top of the document to indicate whether Plaintiff was directing it to the warden, the assistant warden, or the Secretary; however Plaintiff used the same DC1-303 form (request for administrative remedy or appeal). Doc. 38, ex. E (doc. 38, p. 19). The form is stamped "Received" by the Department of Corrections Inmate Grievances and, thus, it is deemed to be a third grievance appeal to the Secretary. *Id.* Plaintiff stated he had been submitting grievances against Defendant Gorman "for over one month now" and said he wanted the institution to take notice "of what had happen [sic] on the day of July 30, 2010 at the parking lot of the RMC." *Id.* Plaintiff said he was "taking the initiative to pursue this complain [sic] because I felt that physical damage has been done to me, do [sic] to those facts of negligence by the officer." *Id.* That grievance appeal was "found to be in non-compliance with" the rules because Plaintiff presented "the same issue as grievance log number 10-6-26505," which was the second grievance appeal, and which was under investigation by the Inspector General's Office. Doc. 38, ex. F (doc. 38, p. 20). That appeal was "returned without action" on September 22, 2010. *Id.*

Plaintiff's fourth grievance appeal was addressed to "Mr. McNeil" and was filed on November 1, 2010. Doc. 38, ex. G (doc. 38, p. 21). Plaintiff said he was submitting the grievance appeal as part of "an ongoing grievance against officer Gorman." Doc. 38, ex. G (doc. 38, p. 21). Plaintiff said "numerous complaints have been sent to " Taylor Correctional Institution where he was housed, but alleged that nothing had "taken

place." *Id.* Plaintiff alleged that since the accident which caused him injury "because of the negligence by the officer," he believed his complaint had been taken lightly because Plaintiff discovered it was deemed to have "no merit." *Id.* Plaintiff attached to that grievance appeal a one-page "emergency grievance" which was unsigned at the bottom, and not on grievance forms, but which claimed that Officer Gorman "moved the step box" just as Plaintiff was exiting the van and he fell to the ground "face first." *Id.*, at 22. That grievance was "not accepted as a grievance of an emergency nature" and Plaintiff was again advised that the subject matter of the grievance was "currently being reviewed by the investigative section of the Office of the Inspector General." Doc. 38, ex. H (doc. 38, p. 23). Plaintiff was further informed that a copy of his grievance would be forwarded to the Inspector General and included in the review and, because that "process was initiated prior to the receipt of" the grievance, Plaintiff's request for action by the Bureau of Inmate Grievance Appeals was "denied." *Id.*

As additional evidence, Defendant Gorman submitted a "declaration of Rebecca Padgham" which states that she reviewed the available grievance records which are "kept" in the Secretary's Central Office. Doc. 38, ex. I (doc. 38, p. 24). She states that Plaintiff had "not filed any grievance appeals alleging staff abuse occurring on July 30, 2010." *Id.* The declaration affirmed that Plaintiff submitted the four appeals identified and discussed above, which staff of the Secretary's office classified as either involving accident or negligence, and asserted that Plaintiff had "not filed any grievance appeal *claiming abuse by staff* on July 30, 2010." *Id.*, at 25 (emphasis in original).

Plaintiff attached several grievances to his response, doc. 46, as evidence of exhaustion. The grievances are duplicates, in part, of some grievances which were

submitted with the initial complaint, doc. 1.  The grievances attached to the initial complaint are more legible.  One grievance is directed to the warden on August 3, 2010,[4] in which Plaintiff claimed Defendant Gorman's negligence caused Plaintiff injury when he fell to the ground.  Doc. 1, p. 12.  Plaintiff said that Gorman did not provide any support to Plaintiff while he was coming down out of the van, but "just let [Plaintiff] fall by taking the box from under" Plaintiff.  *Id.*  The Warden's response, dated August 12, 2010, log # 1008-218-001, found the grievance to be "in non-compliance with" Departmental rules because Plaintiff did not first submit an informal grievance but, instead, simply filed a formal grievance appeal to the warden or assistant warden.  Doc. 1, p. 23.  Plaintiff was advised to submit an informal grievance to Colonel McDonald.  *Id.*

Another grievance was submitted to the assistant warden on August 20, 2010, and is identified as log # 1008-218-035.  Doc. 1, p. 15.  Plaintiff began that grievance by stating, "According to the grievance I filed against officer Gorman for desordely [sic] conduct or if you put it a better word, negligence, must go to the institutional level in order to be effective."  *Id.*  Plaintiff said, "Regardless of how you put it, this accident has cost me a great deal."  *Id.*  Plaintiff complained about the accident and the fact that he was in confinement.  *Id.*  The response by the warden and assistant warden, dated August 20, 2010, states that Plaintiff's "request for administrative remedy has been received in non-compliance."  Doc. 1, p. 26.  Plaintiff was advised that the issue was previously addressed in grievance log # 1008-218-001, and the rules do not permit Plaintiff to appeal a decision already rendered.  *Id.*  Plaintiff was again informed that he

---

[4] Plaintiff dated the formal grievance on August 1, 2010, but the receipt date on the bottom of the form shows it was submitted on August 3, 2010.  Doc. 1, p. 12.

Case No. 4:11cv34-MP/WCS

was to submit an informal grievance, form DC6-236, to Colonel McDonald.  *Id.*
Plaintiff's request was "returned without action."  *Id.*

**Legal analysis**

When the Prison Litigation Reform Act was enacted, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a), *quoted in* doc. 38, pp. 4-5.  The exhaustion requirement of § 1997e(a) is mandatory, Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998), but not jurisdictional, however.  Bryant v. Rich, 530 F.3d 1368, 1374 n.10 (11th Cir.), *cert. denied*, 129 S.Ct. 733 (2008) (citing Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2392, 165 L.Ed.2d 368 (2006)).  The Court may not consider the adequacy or futility of administrative remedies, but only the availability of such.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000), *citing* Alexander, 159 F.3d at 1323.  Even where an inmate seeks only monetary damages in a civil rights case, he must complete the prison administrative process if it could provide some sort of relief on the complaint although no money could be given administratively.  Booth v. Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001).  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007)[5].

---

[5] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion

A prisoner must also comply with the process set forth and established by the grievance procedures. See Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). In other words, not only must a prisoner exhaust a claim under § 1997e(a), the "PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements). Even if a grievance is initially denied as untimely, a prisoner must appeal the denial of the grievance. See Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999)(noting Georgia's inmate grievance procedures allow "the grievance coordinator to waive the time period for filing a grievance if 'good cause' is shown"); Bryant v. Rich, 530 F.3d at 1373.

Defendants "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008), *relying on* Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007) ("Jones does not spell out the proper burden of proof to use in evaluating exhaustion claims, but circuits that treated exhaustion as an affirmative

---

is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

defense prior to <u>Jones</u> have all put the burden of proof on defendants, to the extent that they addressed the issue.").

Defendant's argument that the grievance process was not exhausted because Plaintiff did not grieve "staff abuse" is unpersuasive. The Department's rules require an inmate to sign and date the grievance form, and to state the facts of his grievance, which must address only one issue or complaint. FLA. ADMIN. CODE R. 33-103.006(2); and Rule 33-103.005(2). The grievance process is to "provide an inmate with a channel for the administrative settlement of a grievance," FLA. ADMIN. CODE R. 33-103.001(1), and it is not designed to provide prior notice of a lawsuit. Neither Department rules nor the PLRA requires a prisoner to alert prison officials to a particular legal cause of action. *See* <u>Brown v. Sikes</u>, 212 F.3d 1205, 1207 (11th Cir.2000) (concluding that "while § 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require that he do more than that."), *cited in* <u>Parzyck v. Prison Health Services, Inc.</u> 627 F.3d 1215, 1219 (11th Cir. 2010). The purpose of § 1997e(a)'s exhaustion requirement is "to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued" or identify the claim that will be raised in a lawsuit. <u>Jones</u>, 549 U.S. at 219, 127 S.Ct. 910 (quoting <u>Johnson v. Johnson</u>, 385 F.3d 503, 522 (5th Cir. 2004)).

Here, Plaintiff submitted grievances at the institution level and grievance appeals that reached the Warden and the Secretary's Office. Plaintiff alleged that he was injured on July 30, 2010, because Defendant Gorman removed the step box, causing Plaintiff, who was fully shackled, to fall. The Department was put on notice of the

circumstances of Plaintiff's injury and was provided with a fair opportunity to investigate the incident.[6] This basis for dismissal of the complaint is without merit.

Defendant also claims that because Plaintiff failed to comply with the grievances procedures, his complaint must be dismissed. *Id.* Plaintiff's formal grievance, dated August 3, 2010, doc. 1, p. 12, was in non-compliance with the rules. Plaintiff had to first submit an informal grievance to Colonel McDonald. Plaintiff's first grievance appeal to the Secretary was likewise not correctly pursued because Plaintiff did not show that he first submitted the grievance at the institutional level.[7] Plaintiff's August 20, 2010, formal grievance was ineffective because it was duplicative and Plaintiff could not appeal a decision already rendered. Those grievances were technically deficient and do not demonstrate exhaustion.

The crucial grievance in this case, however, is the second grievance appeal to the Secretary (log number 10-6-26505), which was "denied." The response advised that the subject matter of the grievance was "currently being reviewed by the investigative section of the Office of the Inspector General." Doc. 38, ex. D (doc. 38, p. 18). Plaintiff was told that his grievance would be forwarded to the Inspector General's office to be included in their review of the matter. A response that *denies* a grievance appeal because the matter is already under investigation, as opposed to returning it

---

[6] Defendant's use of the phrase "physical abuse" comes from Plaintiff's language in the complaint that he "suffered physical abuse and mental [unintelligible] and anguish." Doc. 25, p. 9. That is deemed to be Plaintiff's legal theory for this case, but the factual basis for the complaint is Defendant's act of removing the step which caused Plaintiff to fall.

[7] He did submit a grievance to the Warden, but he failed to first submit an informal grievance.

Case No. 4:11cv34-MP/WCS

without action or finding it to be in non-compliance, must be considered exhaustion of administrative remedies.  At that point, there was nothing further for Plaintiff to do.  That conclusion is further supported by the response Plaintiff received to his third grievance appeal.  That appeal was again "found to be in non-compliance" because Plaintiff had already presented the "same issue" in grievance log number 10-6-26505.  Redundant or duplicative grievances are not permitted.  FLA. ADMIN. CODE R. 33-103.005(1)(c).  Plaintiff had no further avenue of relief available, and no additional grievances could be filed.  Because Plaintiff exhausted the grievance process, the motion to dismiss as to the exhaustion argument must be denied.

**Failure to State a Claim**

Defendant also argues that Plaintiff's Eighth Amendment claim should be dismissed because it fails "to raise a right to relief above the speculative level as required."  Doc. 38, p. 11.  Defendant contends that "Plaintiff has not alleged any facts that Officer Gorman intentionally or maliciously kicked the foot stool" or intended to harm Plaintiff.  *Id.*

The issue on whether a complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009), *quoting* Twombly, 550 U.S. at 570, 127

S.Ct. 1955.[8]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S.Ct. at 1949, *citing* Twombly, 550 at 556; *see also* Speaker v. U.S. Dept. of Health, 623 F.3d 1371, 1380 (11th Cir. 2010).  The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.").  A complaint does not need detailed factual allegations to survive a motion to dismiss, but it must provide the grounds for a plaintiff's entitlement to relief beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."  Twombly, 127 S.Ct. at 1964-65.   Moreover, *pro se* complaints are held to less stringent standards than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), *citing* Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

    Plaintiff has not made conclusory allegations, but alleges that Defendant Gorman ordered Plaintiff, while fully shackled, "to come down backward from the van."  Doc. 25, p. 9.  He alleges that just before he reached the foot stool on the ground, Defendant Gorman kicked the foot stool out away.  *Id.*  Those factual allegations are sufficient to suggest Defendant's action was intentional and give Defendant notice of the basis for

---

[8] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, *quoting* Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

the claim.  The facts are more than a legal conclusion or a "formulaic recitation of the elements of a cause of action . . . ."  Twombly, 127 S.Ct. at 1964-65.  This states a violation of the Eighth Amendment.  Davis v. Locke, 936 F.2d 1208, 1212-1213 (11th Cir. 1991) (Eighth Amendment violated when defendants pulled a shackled prisoner from a dog cage on a truck, causing him to fall to the ground on his head).  A court must accept the factual allegations of the complaint as true, Shotz v. American Airlines, Inc., 420 F.3d 1332, 1334-35 (11th Cir. 2005), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, *quoting* Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).  The motion to dismiss the Eighth Amendment claim should be denied.

Defendant also argues that Plaintiff's equal protection and Fourth Amendment claims are insufficient and should be dismissed.  Doc. 38, pp. 10-11.  Defendant is correct.  Plaintiff's equal protection claim fails because he does not demonstrate that "(1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race."  Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001), *quoting* Damiano v. Fla. Parole & Prob. Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986).  Plaintiff has not shown that he was singled out for intentional harm because of his race, age, sex, or any other constitutionally protected interest.  Similarly, Plaintiff has not alleged any facts which provide a basis for a Fourth Amendment claim.  Defendant's motion to dismiss Plaintiff's equal protection and Fourth Amendment claims should also be granted.

**Eleventh Amendment Immunity**

Defendant raises the Eleventh Amendment as a defense to this action, assuming that Plaintiff sues the Defendant in both his official and individual capacities. It is well established that the State of Florida, its agencies, and its officers sued in their official capacity are immune from suit in this Court by force of the Eleventh Amendment. Carr v. City of Florence, Alabama, 916 F.2d 1521, 1524 (11th Cir. 1990); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 58, 116 S. Ct. 1114, 1124, 134 L. Ed. 2d 252 (1996). In enacting § 1983, Congress did not abrogate a state's immunity. Quern v. Jordan, 440 U.S. 332, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979); Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974). Neither has Florida waived its Eleventh Amendment sovereign immunity and consented to suit in federal court under § 1983. Gamble, 779 F.2d at 1520. Finally, this case does not fall under the exception of Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), as Plaintiff seeks monetary relief for damages only and there is no basis for prospective relief concerning a state policy. Sandoval v. Hagan, 197 F.3d 484, 492 (11th Cir. 1999), *citing* Summit Medical Assoc. v. Pryor, 180 F.3d 1326, 1336-38 (11th Cir. 1999). The Eleventh Amendment bars Plaintiff's claim against the Defendant in his official capacity, and the motion to dismiss should be granted as to this aspect.

**Conclusion**

Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss, doc. 38, be **GRANTED in part and DENIED in part**.  Plaintiff's equal protection and Fourth Amendment claims should be **DISMISSED** for failure to state a claim upon which relief may be granted, the claim against Defendant in his official capacity should be **DISMISSED** due to the Eleventh Amendment, but otherwise, the motion should be **DENIED**.  It is further **RECOMMENDED** that this case be **REMANDED** to the me for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on March 12, 2012.

 S/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 4:11cv34-MP/WCS